BLANCHE, Judge.
Plaintiff, Dixie Electric Membership Corporation, seeks a right-of-way in the nature of a servitude over the property of defendant, Carl R. Watts, for the purpose of constructing and maintaining electric transmission and distribution lines. The defendant’s property comprises a tract of 118 acres located on the Denham Road in the northern part of the Parish of East Baton Rouge. The property is “L”-shaped with the top of the “L” fronting on Den-ham Road. The proposed servitude is to contain 2.4 acres and Tun in a generally east-west direction, having a width of 100 feet and extending across defendant’s property a distance of 1,044 feet. The defendant’s house is located a short distance away from the Denham Road, and the servitude would pass to the rear of his home by a distance of approximately 192 feet. Located within the path of the right-of-way are a pumphouse and a barn. A grove of trees also stretches along the length of the servitude.
Judgment was rendered in favor of plaintiff awarding the proposed servitude and condemning plaintiff to pay the sum of $5,400 as the value of the servitude taken, the sum of $5,200 as severance damages to the homesite, the sum of $2,238 as damages to the property located within 250 feet of the servitude and the sum of $2,183 as the cost of relocating the pumphouse and barn.
From this judgment, the plaintiff has appealed and assigns as error the following: (1) the^ finding by the trial court that the parties had stipulated the value of the servitude taken to be the sum of $5,400; (2) the awarding of severance damages for the relocation of the barn and pumphouse; and (3) the awarding of $5,200 as severance damages to the homesite.
The defendant answered the appeal contesting the judgment insofar as it granted a servitude to the plaintiff and in the alternative contested the amount of the award in defendant’s favor, claiming that the defendant was not awarded full and just compensation for the servitude expropriated. Other errors alleged by defendant in the alternative, if the servitude should be granted, include the following: (1) it was of a greater size than needed, (2) the judgment failed to require that the structures to be located within the servitude be particularly described and fixed with exactness; that the voltage and type of transmission line be restricted to a 69 kilo-volt transmission line, and (3) the trial court erred in failing to award to defendant the full fee of its expert appraiser in the sum of $650.
We first consider defendant’s contention that the trial court erred in granting the servitude in plaintiff’s favor. This error is based on the defendant’s charge that *131 plaintiff failed to negotiate with him good faith as required by R.S. 19:2(9).[1] We further assume that the argument that the judgment should limit the servitude to a 69 kilovolt line is also related to the negotiations between the parties, the defendant claiming the only line discussed with him was a 69 kilovolt line. Defendant contends that only at trial did he learn that plaintiff intended to underbuild other service lines over the servitude. in
The cases considering this question have held that an expropriation suit may be dismissed as premature if the con-demnor has not entered into good faith negotiations with the landowner before instituting an expropriation suit. The requirement is met if there is evidence thSt the expropriating authority has made a bona fide effort to obtain the property by conventional agreement prior to filing suit. Gulf States Utilities Company v. Heck, 191 So.2d 761 (La.App. 1st Cir. 1966), writs refused, 249 La. 1021, 1022, 192 So.2d 370; Dixie Pipeline Company v. Barry, 227 So. 2d 1 (La.App. 3rd Cir. 1969), writ refused, 255 La. 145, 229 So.2d 731.
The trial judge had the same question before him on a declinatory exception and stated: 229 So.2d 731.” (Written Reasons for Judgment, Record, p. 32)
“The evidence on this point indicates unquestionably that the plaintiffs representatives made efforts to resolve the matter by settlement with either the defendant Watts or his attorney. Therefore the court overrules the declinatory exception of prematurity. Dixie Pipeline Co. v. Barry [La.] App.1969, 227 So.2d 1, writ refused 225 [255] La. 145,
After a review of the evidence, we are of the same opinion. Initially, representatives of the plaintiff conducted negotiations personally with the defendant. Thereafter, Mr. John C. Judice, right-of-way coordinator for plaintiff, testified that at a meeting in the office of defense counsel he offered defendant the sum of 10 percent above that determined by their appraiser to be the value of the fee ($2,000) plus $600 extra, all of which was refused. We view the foregoing as a good faith offer. In Dixie Pipeline Company v. Barry, cited supra, it is stated:
“There is no requirement that negotiations be conducted to a conclusion, or that the condemnor increase the initial offer which it made for the property.” (Dixie Pipeline Company v. Barry, 227 So.2d 1, 5)
Defendant contends that we should limit the construction on this line only to a 69 kilovolt line because that was the only line which was the subject of negotiations between the parties. While it is true that the representative of plaintiff, Mr. Judice, discussed with defendant the construction of such a line, we do not believe that plaintiff was required to discuss or bargain with defendant for every line which it contemplated might possibly be constructed within a servitude which was being obtained for the purpose of constructing therein both electrical transmission and distribution lines.
Additionally, we do not find any merit in the defendant’s contention that er *132 ror was committed by the trial court in failing to specify with exactness the location of the proposed structure or structures within the servitude or that the trial court gave a servitude greater in size than needed. A measure of the sincerity of this assignment of error can be revealed by the lack of evidence thereof in the record and the failure of counsel even to make mention thereof in his brief.
The trial judge was in error in stating that the parties stipulated the value of the part taken to be the sum of $5,400. However, the error is of no consequence because we are not inclined to change the award for the land taken for the servitude. The parties actually stipulated that the value of the fee of the part taken was $2,500 per acre or $6,000 for the 2.4 acres taken. The $5,400 was arrived at by the trial judge by taking 90 percent of the fee valuation as the value of the part taken.
Appellant’s principal assignment of error concerns the Court’s acceptance of the testimony of defendant’s appraiser, Mr. Russell Doiron, with regard to the fact that the value of the servitude in relation to the value of full ownership was 90 percent of the fee valuation. As shown above, the trial court’s figure of $5,400 was arrived at by assigning the value of the servitude at 90 percent of the fee valuation. Opposed to Mr. Doiron’s estimate of 90 percent of the fee as the value of the servitude is the estimate of plaintiff’s appraiser, Mr. Chester Driggers. Mr. Driggers estimated the value of the servitude as 80 percent of the fee valuation.
Where only a servitude or easement is expropriated and the landowner will continue to have some use of the property included within the right-of-way, the servitude taken should be valued at a percentage of the fee value of the land and not at its full value. Central Louisiana Electric Company v. Fontenot, 159 So.2d 738 (La.App. 3rd Cir. 1964), and cases therein cited. Where the expropriation of the servitude completely destroys the suitability of the land for the purpose for which it is best suited, it is proper to award the landowner the full fee value even though merely a servitude is expropriated. However, each case should be decided on its own merits and not by some reference to an automatic percentage. Further, any percentage of fee used by the appraiser should be justified by the appraiser by reference to limitation of use of the property occasioned by .the taking, considering particularly the highest and best use of the land and the specific use that could be made of the land at its highest and best use.
Mr. Doiron, in commenting on the damages the property would suffer as a result of the presence of a high power electric transmission line, also pointed out limitations with respect to the use of the property taken. It was his contention that the presence of the servitude on the property creates problems in physically planning for the development of the property to its highest and best use for subdivision home-site development. He also considered that the value of the area where the posts or towers are to be located would be equal to the fee value of the property taken. He further submitted that the presence of a servitude located in an urban area deprives the owner of the fee of the exclusive control over the use of the servitude by unauthorized persons and even encourages trespass.
Mr. Driggers found some uses for the land after the taking, i. e., the land could still be used for pasture and for side yard area and it might also be used for rights-of-way such as sewerage, drainage and electrical distribution lines.
The foregoing considered, we find no abuse in the trial judge’s acceptance of Mr. Doiron’s testimony that the land within the servitude should be valued at 90 percent of the fee value of the land.
Testimony concerning the necessity of removing or relocating the barn and pumphouse came from defendant’s apprais *133 er, Mr. Russell Doiron. He arrived at the sum of $2,183 for relocation of these items and stated that his past experience in right-of-way work led him to believe that some day and for some reason either the defendant or a future owner of the fee of the property would be required either to rebuild or relocate these improvements, and, therefore, they were proper items of damage. The record is barren of any testimony to indicate that Mr. Watts would have to relocate either of these items. Mr. Watts’ own testimony indicates that he had no intention of removing the barn. Further, the plaintiff stipulated in open court that not only would the barn and pump-house be allowed to remain but also improvements and repairs could be made to the barn and pumphouse as long as they did not interfere with Dixie’s use of the servitude.
We, therefore, conclude that the trial court’s award of damages in the sum of $2,183 for relocating the pumphouse and barn was manifestly erroneous.
The trial court, in accepting the estimate of defendant’s expert witness, Mr. Doiron, awarded the sum of $5,200 as severance damages to the homesite. Plaintiff complains that it is obvious the award was based on loss of aesthetic enjoyment of the view from the rear of the house. In making this assumption plaintiff is in error. As noted heretofore, the house is located only 250 feet from the servitude, and in the servitude area beautiful trees form a background lending beauty to the homesite. These trees will be removed as a result of the taking and electrical transmission lines hanging from towers will take their place. In the opinion of both experts, the property will not be as attractive as it was before the taking.
Mr. Driggers, plaintiff’s expert, estimated severance damages at $1,500, while Mr. Doiron, defendant’s expert, estimated this to be $5,200. We regard the estimate of both these witnesses as representing the diminished value of the home-site property absent the trees, although Mr. Doiron additionally listed other factors as contributing to the diminution in value. We do not regard the trial court’s acceptance of Mr. Doiron’s estimate as error. The photographs of the property which were introduced into evidence depict the beautiful setting of the homesite, and we agree that the trial judge’s acceptance of the larger damage figure occasioned by the destruction of the trees is more reasonable.
In dealing with the question of severance damages to the property, we quote with approval from the trial court’s opinion:
“From our review and appreciation of the testimony of the witnesses, the court is of the opinion that the defendant did sustain severance damages to a portion of the remainder of his property. However, the court is not impressed with the opinion of the landowner’s appraiser that the damages would extend over the entire rear portion of the property. As pointed out by Mr. Driggers, there are valid examples in the Parish involving similar instances where no such depreciation of value has prevailed. Because of the fact that the view from the rear of Mr. Watts’ home will be impaired and because of proximity damages to the property within a short distance of the right of way, the court believes that there are severance damages established in an amount more consistent with the views expressed by Mr. Doiron. However, the court does believe that these damages should be restricted to the area surrounding the Watts’ residence and within 250 feet of the right of way. The items of damages were described by Doiron as being $5,200.00 and $2,238.00, respectively. * * *” (Written Reasons for Judgment, Record, p. 35)
The trial court fixed the expert witness fee of Mr. Doiron, defendant’s appraiser, at $600. The defendant contends that he should have been awarded $50 more on the basis that Mr. Doiron testified his fee was $650. A determination *134 of the amount of the award for expert witness fees rests largely within the discretion of the trial judge, and an agreement entered into between an expert witness and one of the parties to the suit as to the fee which the former is to receive is no criterion to be used by the court in fixing expert fees. State v. Donner Corporation, 236 So.2d 841 (La.App. 3rd Cir. 1970); Recreation and Park Commission v. Perkins, 231 La. 869, 93 So.2d 198 (1957); State, Department of Highways v. Black, 207 So.2d 583 (La.App. 3rd Cir. 1968).
The trial judge’s failure to award defendant’s appraiser the extra $50 was certainly not an abuse of his discretion.
For the above and foregoing reasons, the judgment of the trial court is amended by reducing the award to defendant from $15,021 to $12,838, the $2,183 reduction representing an item of damage the trial court awarded for the cost of relocating the pumphouse and barn. In all other respects, the judgment is affirmed. All costs of these proceedings are assessed to plaintiff-appellant.
Amended and, as amended, affirmed.

. R.S. 19:2(9) reads, in pertinent part, as follows:
“Where a price cannot be agreed upon with the owner, any of the following may expropriate needed property:
* * * * *
“(9) Any domestic or foreign corporation created for the purpose of developing and transmitting electricity for power, lighting, heating, or other such uses. The buildings, transmission lines, stations, and sub-stations expropriated or for which property was expropriated shall be so located, constructed, operated, and maintained as not to be dangerous to persons or property nor interfere with the use of the wires of other wire-using companies or, more than is necessary, with the convenience of the land-owner.”