406 So.2d 669 (1981)
SOUTHERN NATURAL GAS COMPANY, Plaintiff-Appellee,
v.
Bill C. SUTTON, et al., Defendants-Appellants.
SOUTHERN NATURAL GAS COMPANY, Plaintiff-Appellee,
v.
SUN FRESH FARMS OF LOUISIANA PARTNERSHIP, et al., Defendants-Appellants.
Nos. 14684, 14685.
Court of Appeal of Louisiana, Second Circuit.
November 2, 1981.
Rehearing Denied December 10, 1981.
*670 Bobby L. Culpepper, Jonesboro, Hal Henderson, Arcadia, for defendants-appellants.
Liskow & Lewis by Robert T. Jorden, John M. Wilson & Frederick W. Bradley, New Orleans, for plaintiff-appellee.
Before PRICE, HALL and MARVIN, JJ.
En Banc. Rehearing Denied December 10, 1981.
MARVIN, Judge.
These appeals arise out of two expropriation actions that were later tried and are companion cases to the appeals reported this date in Southern Natural Gas Company v. Poland, et al., 406 So.2d 657 (La.App.2d Cir. 1981). Issues relating to the taking of the respective rights of the defendants in two acres in these consolidated cases were tried by the trial judge, while the compensation issue was tried by jury.
All of the taking issues here raised by defendants-appellants were included among the issues resolved in Poland, supra, and for the reasons assigned there, we find them without merit here.
The Sutton defendants are not land owners, but own small fractional interests in the right to recover the recoverable natural gas and condensate in the reservoir underlying two 40 acre tracts and are entitled to just compensation therefor.[1] The only expert evidence before the jury of the quantity and the value of the recoverable gas and condensate was presented by Southern Natural. Defendants presented *671 no expert opinion evidence. The reservoir was 98 or 99 percent depleted when these cases were tried. The uncontradicted testimony established that the value of the Sutton interests in the recoverable natural gas and condensate in this reservoir totaled $73.23, or $10.55 for Mrs. Sutton's separate interest and $62.68 for the interest of the community estate existing between her and her husband.[2] Yet the jury awarded $2,438.75.
The Sun Fresh defendants own the surface of a two acre tract, but do not own any mineral rights. Surface ownership, however, includes the right to the use of the reservoir underlying the two acres for storage purposes. This was the right expropriated in the Sun Fresh case and it is the value of that storage right which is primarily at issue in the Sun Fresh case. Again the only expert evidence before the jury as to the value of the storage right was presented by Southern Natural. Again defendants presented no expert opinion evidence. The uncontradicted testimony established that the value of the storage right was $295 per acre, a $10 per acre increase because of inflation from the value testified to in Poland by the same expert. Yet the jury awarded $3,500 per acre, or a total of $7,000.
The trial judge who had determined values in the Poland cases ordered a remittitur to which defendants would not agree. This placed plaintiff in the peculiar position of having to oppose a new trial because of the practical and economic necessity of expediting completion of the storage facilities in and atop the reservoir underlying 13,000 acres when, relatively speaking, the dollar amount and the acreage in Sun Fresh/Sutton was small. Fortunately, the legislature has provided for such a situation and has allowed a devolutive appeal, even after an expropriator pays or deposits the amount of the judgment as the law requires in order for the expropriator to take possession of the property right expropriated. A suspensive appeal is not allowed in these expropriation cases to either litigant. See LRS 19:12, CC Art. 2634, Columbia Gulf Transmission Co. v. C. J. Grayson, Inc., 232 So.2d 150 (La.App.2d Cir. 1970).
Defendants perfected their appeals and plaintiff answered each appeal without having to perfect its appeal, but seeking by the answer to reduce the amounts awarded defendants. Defendants' contentions on appeal have been answered in Poland. The trial court here correctly refused to accept defendants' appraiser as an expert witness for the purpose of estimating the value of the storage right. See Poland, supra.
Plaintiff contends on appeal that the judgments based on the jury verdicts are manifestly erroneous and unsupported by any evidence and that attorney fees and costs should not have been assessed against plaintiff under the circumstances. We agree with plaintiff's contentions except as to the assessment of costs. Again see our discussion of LRS 19:12 and Louisiana Gas Purchasing Corp. v. Sincox, 368 So.2d 816 (La.App.2d Cir. 1979), in Poland, supra.
The only expert opinion evidence before this jury was presented by expert appraisers offered by Southern Natural. These were the same experts who testified in Poland. Similar letters were mailed to and received by defendants here as were discussed and quoted in part in Poland. Plaintiff showed that it had offered to the respective defendants more than the fair market value of the respective property right owned by each defendant in an effort to avoid litigation and not as an admission that the offer constituted the fair market value of the right. Compare Sincox, cited in Poland, supra.
*672 In Department of Highways v. Wall, 32 So.2d 718, (La.App.2d Cir. 1947), the State exercised its power of expropriation for a highway right of way across one acre in a rural area of Ouachita Parish. The only expert opinion evidence was presented by the State. The defendant did introduce deeds of improved land in the vicinity of the acre which apparently recited a consideration much higher than the value testified to by the State's expert appraisers. The court said the deeds were of little or no value. A jury awarded more than three times the average of the expert appraisers' estimate of value. This court observed:
"There certainly is no testimony whatever in the record to warrant the valuation fixed by the jury. All things considered, we are of the opinion that the valuation fixed by the two experienced realtors is fair and should be accepted as determinative of the question." 32 So.2d at p. 719.
The court's comments on the law and procedures regarding expropriation are appropriate in the circumstances of this record.
"The reason for referring to a jury ... the question of the value of real estate taken for public purposes is well known to all, and in a case where the proof submitted on the question of value is conflicting, the jury's fixation of value should not be disturbed unless it is manifestly erroneous. But, in no event is the jury warranted in ignoring the testimony introduced in the case and substituting therefor their own private ideas or opinions on the issue of value. * * *
"Courts have the inherent power to review jury's award of damages for property taken for public purposes, and to correct obvious errors..." ibid.
These principles have not changed. The recently adopted Constitution expressly continues our responsibility of reviewing facts as well as law. LSA-Const. Art. 5, § 10. Legislative enactments in the expropriation scheme since 1947 have limited somewhat our jurisdictional authority, but where we have jurisdiction, the constitutional scope of review continues as before. Compare LSA-Const. Art. 1, § 4, and LRS 30:22. More recent cases have stated the principle. See State Dept. of Highways v. Entre Nous, Inc., 283 So.2d 291 (La.App.4th Cir. 1973).
To relate the circumstances of this case to the quoted principles, we observe that the deed of the Enterprise sale has no weight in determining the value of the Sun Fresh-Sutton property rights and that defendants offered no estimate of the value of those rights. We observe that even the owner of property may testify in an expropriation action as to his estimate of the value of his own land if he has owned it for some time and knows of sales of land in his neighborhood. See State v. Barbe, 209 La. 185, 24 So.2d 372, 374 (1946). Deeds of property other than the property in question are not "comparable" simply because they involve adjacent or abutting property, or property put to a similar use. The comparable sales method of ascertaining market value is merely a technique used by the expert appraiser which is much approved by the courts in determining value. The appraiser gathers record evidence of sales of other property, verifies them, makes comparisons, selects those that are the most comparable to the property whose value is in question, and from this technique, offers his opinion or estimate as to the market value of the property in question. See Dakin and Klein (1970), p. 181.
The issue to be determined is not what other similarly situated or comparable property sold for, but is what is the estimated market value of the particular property or property right in question.
Here there was no estimate of market value of the property rights in question other than the estimate of the appraisers testifying for Southern Natural. Where there are conflicting estimates on the question of value, this court upholds the trier of fact (judge or jury) unless the determination of value is demonstrated to be obviously erroneous (to use the Wall terminology) or manifestly erroneous. See Poland, supra, Wall, supra.
*673 Accordingly, the judgment in each case will be amended to reduce the amounts awarded, to delete the award of attorney fees, and to cast plaintiff with costs.
The awards to the Sutton defendants are reduced to these amounts:

Mr. Sutton, separate property right: $10.55
Sutton community property right: $62.68

The award to the Sun Fresh defendants is reduced to $590.00.
Plaintiff is cast with costs here and below. As above amended, judgment in each appeal is affirmed.
NOTES
[1] The separate interest of Mrs. Sutton was a .000069 unit royalty interest. The community interest of the Suttons was a .000410 unit royalty interest.
[2] Present values were assigned for 179,400 MCF of commercially recoverable natural gas and 1,955 barrels of condensate. Mrs. Sutton's separate .000079 URI and the Sutton community.000410 URI were then multiplied by these values and quantity to produce these dollar amounts:

Separate property
 natural gas $8.07 $10.55
 condensate 2.48
Community property
 natural gas $49.96
 condensate 14.72 $62.68