SARTAIN, Judge.
This is an expropriation proceeding under the authority of R.S. 48:441, et seq. (Louisiana’s quick taking statute) for the purpose of acquiring sufficient property to construct an interchange at State Route Louisiana— U.S. 190 near Covington, Louisiana.
The property taken consists of some three lots in their entirety and fractional portions of an additional eleven lots in a subdivision known as County Club Estates in St. Tammany Parish. The lots are on unimproved residential homesites which are deed restricted to single family dwellings. The subdivision has been in existence for approximately ten years. It is bordered on the east by U.S. 190. The lots to the rear of the subdivision surround a golf course. The lots here involved are located near but do not front on Highway 190.
The State deposited the sum of $68,215.00 on January 29,1974. At trial on the merits on June 24, 1976, its appraisers “updated” and adjusted their appraisals accordingly. Mr. Henry B. Breeding, in particular, placed a value of $85,790.00 for the part taken and assigned as severance damages to the remainders the sum of $17,728.00, for a total just compensation of $103,518.00. The trial judge accepted Mr. Breeding’s appraisal and awarded defendant judgment in the amount of $103,518.00, together with legal interest on the difference between the amount of the judgment and the sums initially deposited from January 28,1974, until paid, and expert witness fees.
Defendant has appealed and contends that the trial judge erred (1) in accepting the appraisal of Mr. Breeding in that it was based entirely on comparable sales which occurred after the taking, and (2) in awarding inadequate witness fees. We find merit in appellant’s first contention and amend the award accordingly.
In expropriation suits of this nature the date of the taking is the date that suit is filed, for on this occasion the property rights specified in the petition are transferred to and vested in the State. R.S. 48:445. It is on this date that the value of the property must be determined. Where there is a dispute as to the value of the property that is expropriated, the issue presented requires a determination as to the property’s true market value. That value is a sum that would be agreeable as between a willing purchaser and a willing seller in an arm’s length transaction. To this end, various methods are utilized. Where the situation permits, the most satisfactory method is the market data approach, i. e., the use of sales of similar properties.
In an effort to assure similarity between a given comparable and the property expropriated, the courts have consistently held that transactions which followed the date of the taking should not be used. State, Department of Highways v. Colby, 321 So.2d 878 (La.App. 1st Cir. 1975), writs refused 325 So.2d 278 (La.1976); State, Department of Highways v. Christy, 283 So.2d *426 533 (La.App. 1st Cir. 1973); State, Department of Highways v. St. Tammany Homestead Assn., 304 So.2d 765 (La.App. 1st Cir. 1974), writs refused, 307 So.2d 373 (La.1975).
The State argues to the contrary and cites St. Tammany Homestead Assn., above; State Department of Highways v. Guste, 319 So.2d 468 (La.App. 4th Cir. 1975); State Department of Highways v. DeRouen, 228 So.2d 659 (La.App. 3rd Cir. 1969), reversed on other grounds, 256 La. 947, 240 So.2d 717 (1970). We find the facts in these cited cases inapposite to those in the case at bar. In St. Tammany Homestead Assn., above, we held that posttaking transactions could be “considered in support of an appraiser’s finding of an annual increase in value antecedent to the taking.” In Guste, above, the court stated that a posttaking sale “can be useful in confirming the value of the property.” The court did concede that subsequent sales unrelated to the expropriation are often indicative of recent market trends. In DeRouen, above, the court held that while a subsequent sale could not be used to determine the market value of expropriated property, such a sale was permissible for the purpose of showing the “market trend.” We do not construe these cases as standing for the proposition that the State urges. To the contrary, in each of these cases the use of sales subsequent to the' taking were permissible but on a restricted basis.
Future cases may disclose a unique situation where there are no available pretaking comparables, thus necessitating the use of posttaking sales. Such, however, is not the case at hand.
Four appraisers testified in the instant matter, Messrs. H. B. Breeding and Leland Landry for the State, and Messrs. Frank J. Patecek and James A. Stevenson for the defendant. Each of these appraisers used as comparables sales of lots within the subdivision. However, both of the State’s appraisers used as the sole basis for their respective appraisals sales occurring subsequent to the taking on January 28, 1974.
Mr. Breeding used seven sales as compa-rables. These sales ranged from nine to twenty-one months after the taking with all but one occurring over a year after the taking. Mr. Landry used six of the same sales as that of Mr. Breeding and five of them occurred over one year following the date of the taking.
On the other hand, all of the sales used by defendant’s appraisers occurred prior to the taking. Mr. Patecek used eight sales, all within six months of the taking. Mr. Stevenson used four sales, all within ten months of the taking.
Each of the appraisers was of the opinion that the lots herein expropriated were not as desirable as those lots in the subdivision which adjoined the golf course or other lots which were situated in the more wooded areas of the subdivision. However, we are satisfied that there were ample sales prior to the taking of similarly situated lots upon which to base values comparable to the lots herein expropriated. Under these circumstances the appraisals of Messrs. Breeding and Landry must be rejected and the appraisals of Messrs. Patecek and Stevenson must be accepted.
Of the two, we accept the appraisal of Mr. Patecek. A review of his written report and his testimony clearly reflects that it is in greater detail and accords full consideration of such factors as location, topography, trees, surrounding improvements, etc. Each of the lots used by him were adjusted, plus or minus, with these factors in mind. He placed a value of $120,968.18 on the part taken and severance damages to the remainders at $26,669.39, for a total just compensation of $147,637.57.
We now turn to the remaining issue. Defendant contends that the trial court erred when it reduced Mr. Patecek’s expert witness fee from $4,400.00 to $3,312.00. In his written reasons for judgment, the judge a quo stated:
“Mr. Patecek has set forth in detail the amount of hours that he worked on his appraisal. He has testified that he put in 252 hours in preparing the appraisal report. However 68 of these hours were *427 put into a time study which the Court feels was not really necessary in this particular appraisal and accordingly, the Court will reduce Mr. Patecek’s fee by $1,088.00 and allow him the sum of $3,312.00 as his fee. Mr. Stevenson’s fee the Court sets at the sum of $2200.00.”
The time study referred to by the district judge entails a review of all sales in Country Club Estates Subdivision from the date of its inception in January of 1968. Under these circumstances we find no abuse of discretion and affirm the amount set. State, Department of Highways v. Colby, above.
For the above reasons, the judgment of the district court is amended by increasing the amount awarded as just compensation from the sum of $103,518.00 to the sum of $147,637.57, subject to a credit of $68,215.00, with legal interest on the difference thereof of $79,422.57 from January 29, 1974, at the rate of seven percent per annum until paid. In all other respects the judgment of the district court is affirmed. All such costs as are permitted by law are assessed against the appellee.
AMENDED AND AS AMENDED AFFIRMED.