463 So.2d 648 (1984)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT
v.
Hal P. WINN et ux.
No. CA 2095.
Court of Appeal of Louisiana, Fourth Circuit.
December 18, 1984.
Rehearing Denied February 26, 1985.
*649 Bernard J. Malone, Jr., Louisiana Dept. of Transp. and Development, Baton Rouge, Jesse S. Guillot, New Orleans, William W. Irwin, Jr., Bryan Miller, Baton Rouge, for appellant.
Robert F. Fadaol, Gretna, for appellee.
Before SCHOTT, BARRY and CIACCIO, JJ.
CIACCIO, Judge.
The State of Louisiana, Department of Transportation and Development filed this action to expropriate the defendants' residential property, located at 1627 Hermosa Street in Algiers, so as to allow for the construction of the Greater New Orleans Mississippi River Bridge. The trial court, after a bench trial, rendered judgment for the defendants in the sum of ten thousand dollars ($10,000). Plaintiff and defendants appeal complaining of the nature and amount of the trial court's award. We amend the judgment of the trial court and as amended, we affirm.
The issues presented by this appeal are as follows: (1) Did the trial court err in rendering judgment against the State of Louisiana in the sum of $10,000? (2) Did the trial court err in failing to award the State of Louisiana a credit of $10,500.00 for additional compensation paid to defendants prior to trial? (3) Did the trial court err in refusing to award expert fees to a witness called by the defendants? (4) Are the defendants entitled to attorney fees and costs?
On June 26, 1981, plaintiff filed a petition for expropriation and placed the sum of $75,000 into the registry of the court, as an estimate of just compensation. The defendants withdrew the sum deposited and filed an answer to the petition, alleging that the property was worth $89,000. In its amended answer filed December 1, 1982, the defendants alleged, however, that the property was worth $92,450.
The defendants later purchased a residence located at 2245 Beck Street in Algiers for the sum of $87,000. In conjunction with this purchase, the plaintiff, on March 26, 1982, paid the defendants a replacement housing payment of $21,303.03, which included $10,500 as a supplement to the original *650 deposit, $9,833.53 for the increased interest differential on the new mortgage, and $969.50 for incidental closing costs. (Exhibit P-6) Subsequent to payment of the replacement housing claim and prior to trial, the State filed a rule to show cause why any excess judgment rendered in the expropriation proceedings should not be subject to a credit of $10,500.00 because of the additional compensation paid to defendants for the taking of their property, and because of the contractual agreement between the State and defendants which provided: "In the event the valuation for the referenced parcel as shown in Item 1-A-3 [i.e., Expropriation Amount $75,000] is litigated. I agree that the amount of the replacement housing payment (Item II-A-6) [i.e., total supplement] shall be recalculated, using the final award as a basis for the valuation in Item I-A-3, and any overpayment shown to have been made as a result of such recalculation, shall be refunded to the Department." The rule was not disposed of prior to trial, but was referred to the merits, with the trial judge asserting that he would rule on it at the same time as he rendered judgment on the main demand. (Tr. pp. 384)
On June 29, 1983 the trial court rendered judgment in favor of Mr. and Mrs. Hal P. Winn and against the State of Louisiana in the amount of $10,000.00. The judgment did not address the State's rule for a credit of $10,500.00, nor did the trial judge give written reasons for judgment. The State and defendants both filed motions for new trial requesting the court, among other things, to rule on the State's claim for offset and for written reasons for judgment. On September 27, 1983 both motions were denied. The State and defendants appealed devolutively.
The subject property is located in Square 274, Lot 6, at 1627 Hermosa Street in Algiers, New Orleans, Louisiana. The lot fronts on Hermosa Street, measuring a width of 33.40 feet in front, 33.49 feet in the rear and a depth of 160 feet. The two-story, brick veneer, custom built, single family home contains approximately 2300 square feet of living space. At the time of the plaintiff's initial inspection the house contained an unfinished storage room. Prior to trial the room was completed by the defendants. Mr. Winn added paneling and carpet to complete the unfinished room, at a cost to him of five hundred dollars. The record does not show that these improvements were made prior to the June 26th, 1981 taking.

Just Compensation
The measure of compensation in expropriation cases is set forth in Revised Statute Title 48 Section 453:
A. The measure of compensation for the property expropriated is determined as of the time the estimated compensation was deposited into the registry of the court, without considering any change in value caused by the proposed improvement for which the property is taken.
* * * * * *
C. The owner shall be compensated to the full extent of his loss. The court shall include in its consideration the difference between the rate of interest of any existing mortgage on an owner-occupied residence and the prevailing rate of interest required to secure a mortgage on another owner-occupied residence of equal value.

* * * * * *
The Court of Appeal, in State Department of Transportation and Development v. Goldsby, discussed the issue of valuation as it relates to just compensation of the landowner. 427 So.2d 580 (La.App., 5th Cir., 1983). In the Goldsby case supra at 581-582, the court stated:
The land owner is entitled to "just and adequate compensation" for the expropriation of his land. Such compensation is measured by the market value of the property taken. State Department of Highways v. Ponder, 345 So.2d 106 (La. App. 1st Cir.1977).
Market value has been defined to mean "... the worth of the land considered in the light of its best and highest use, this *651 being the most favorable employment to which the property is adaptable and may reasonably be put in the not too distant future." State Department of Highways v. Rapier, 246 La. 150, 164 So.2d 280 (La.1964).
The use of land considered in determining market value must be one which has a bearing on the market value at the time of the taking, and one which would be considered by a willing buyer as affecting the market value. Lafayette Airport Commission v. Roy, 265 So.2d 459 (La.App. 3d Cir.1972).
In cases of expropriation, the more reliable and approved method for determining the fair market value of the property taken is to consider comparable sales, adjusting them to compensate for their relative bad and good features with regard to the expropriated property. State, Through the Department of Highways v. Romano, 343 So.2d 222 (La.App., 1st Cir., 1977) Accordingly, the determination of what amount will compensate the owner of a property right, to the full extent of his loss because of expropriation of his right, must be made on the basis of the facts of each case and in accord with the uniqueness of the thing taken. Southern Natural Gas Co. v. Poland, 406 So.2d 657 (La.App. 2nd Cir., 1981). Such findings of fact will not be upset unless they are manifestly erroneous. State of Louisiana v. Ransome, 392 So.2d 490 (La.App., 1st Cir., 1980), State, Through the Department of Highways v. Romano, supra.
In cases of expropriation, the title to the property vests with the department and the right to just and adequate compensation vests with the former owner at the time the deposit of the amount of the estimate is made into the court's registry. R.S. 48:445. It is on this date that the value of the property must be determined. State Department of Highways v. Rosenblum, 344 So.2d 424 (La.App., 1st Cir., 1977).
In this case the former owner and four real estate appraisers testified.
Mr. Winn, the former owner, testified that he received an official notice of the intended expropriation in 1979. He stated that since he was advised that completion of an unfinished room in the house would enhance its value by five to six thousand dollars, he personally installed carpet and paneling in the room. These improvements were made after real estate appraiser, Angus Eason, had inspected the property. The defendant did not testify as to the exact date that he did the work, and Eason did not testify as to the actual date of his inspection, although his written appraisal is dated November 19, 1981. Under these circumstances the defendant did not prove that this work was done prior to the taking, and we give him no credit for same.
The defendant also testified that he received $75,000.00 from the State and also $21,305.30 as a relocation fee. He further testified that he purchased a new home at a price between $85,000 and $87,000.
Jack Evans, a real estate broker and appraiser, testified that he appraised the subject property using the market data and cost approach. Under the cost approach he valued the land and buildings at $83,051 while under the fair market value approach he valued it at $80,000. He therefore concluded that the fair market value, as of June 26, 1981 was $81,500.
Louis Derbes, a qualified real estate appraiser, used the cost and market data approach. Under the cost approach the property was valued at $80,800, while under the data approach it was valued at $78,000. Derbes concluded that the fair market value for the property, as of June 26, 1981, was $78,000.
Earl Schmitt, a real estate appraiser inspected the property and appraised it for $85,350, using the market data and cost approach. He testified, however, that if the house had been finished and the consumer price index adjustment made that he would value the house at $92,000.
Angus Eason, a real estate appraiser, inspected the property and prepared an appraisal with the valuation effective as of *652 June 26, 1981. He stated that he found no properties similar to that of the Hermosa Street property. Accordingly, he did not use the market value approach. Rather, a reproduction cost method was used wherein consideration was given to the cost new today or at the effective date less depreciation. He used the market value approach on the land. Accordingly, he concluded that the house was worth $77,699, the land was $10,665, the patio was $1,385, the fence $1,600 and $600, and the storage shed was $500 for a total value of $92,450.
Evans, Derbes and Eason furnished comparable sales and detailed reproduction cost estimates to substantiate their appraisals, but Schmitt furnished no comparables in testimony or in his written appraisal.
The difference in valuation between the Derbes, Evans and Eason appraisals resulted from different land valuations, depreciation factors and reproduction cost estimates. Schmitt gave no breakdown between land and improvements. Schmitt's appraisal, without regard to any increase in value because of the finishing of the storage room, but applying his addition for inflation at 1% per month for 3 months was $87,910.50. Eason's appraisal was $92,450.00, Evans' appraisal was $81,500.00, and Derbes' appraisal was $78,000.00.
The trial judge apparently concluded that the fair market value of the property was $85,000.00 and rendered judgment accordingly. We find no error in this conclusion and we hold that $85,000.00 is the fair market value of defendant's property. We further find that the State is entitled to a credit of $10,500.00 as an offset against the judgment because of the additional payment made to defendants on March 26, 1982 and because of the contractual provisions which obligated the defendants to give credit to the State for the additional sum received if the matter was litigated.

Expert Fees
Defendants allege that the trial court erred in refusing to award expert fees to one of their experts, Angus Eason.
The fixing of expert fees is a matter which is largely within the sound discretion of the trial court and such a decision will not be disturbed on appeal absent a clear abuse of discretion. State Department of Highways v. Salles, 387 So.2d 1278 (La. App., 1st Cir., 1980).
However, we find no reason for awarding expert fees to Schmitt and denying them to Eason, particularly since the Eason appraisal was more detailed and furnished comparables while Schmitt's did not. Accordingly, we find it was error to deny the expert fee to Eason, and we fix same at $200.00.

Attorney Fees and Cost
The defendants contend that they are entitled to attorney fees because of the bad faith negotiations of the State. We disagree.
The award of attorney fees in expropriation cases are statutorily prescribed:
R.S. 48 Sec. 453:
* * * * * *
E. Reasonable attorney fees may be awarded by the court if the amount of the compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment. Such attorney fees in no event shall exceed 25% of the difference between the award and the amount deposited in the registry of the court.

* * * * * *
Although the deposit of $75,000 initially made by the plaintiff was less than the value assigned to the property by plaintiff's appraiser we are not convinced that the plaintiff acted in bad faith considering that plaintiff paid an additional $10,500 nine months later and prior to trial. The granting of attorney fees is within the sound discretion of the trial judge and we find no abuse of his discretion.
Defendants also argue that they should be awarded their costs of this proceeding. The district court's judgment is silent with regard to the payment of costs.
*653 We therefore amend the judgment to assess the State with defendant's costs of the proceeding. LSA-Const. Art. 1 Sec. 4, State, Through Department of Highways v. Henderson Prop., Inc., 264 So.2d 348, Sterkx v. Gravity Drainage District No. 1 of Rapides Parish, 214 So.2d 552 (La.App. 3rd Cir.1968) writ refused 215 So.2d 130.
Accordingly, the judgment of the district court is affirmed in so far as it granted judgment in favor of the defendants and against the plaintiff for the sum of $10,000.00. It is amended to include legal interest from date of judicial demand until paid subject to a credit of $10,500.00 paid on March 26, 1982. It is also amended to award expert fees in the sum of $200.00 to Angus Eason in addition to the $200.00 awarded to Earl Schmitt. Defendant's costs are assessed to plaintiff. The judgment, as amended, is affirmed.
AMENDED AND AFFIRMED.