489 So.2d 293 (1986)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT
v.
Carlota Fowler PIPES.
No. CA-4819.
Court of Appeal of Louisiana, Fourth Circuit.
May 12, 1986.
Writ Denied September 8, 1986.
*294 Ronald J. Bertrand, Rayne, for plaintiff.
William H. Cook, Jr., Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, New Orleans, for defendants-appellees Fazzio Real Estate Co., Inc. and Fazzio Recreation Center, Inc.
Val A. Schaff, III, Schaff & Currier, New Orleans, for appellee Bridge Bowl, Inc.
M. Taylor Darden, Melanie Miller Lewis, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, for defendants-appellants Carlota Fowler Pipes, Pamela Pipes Kaye, Ashley Stewart Pipes, Elizabeth Pipes Swanson, and Carlota Pipes Woolworth.
Before BARRY, CIACCIO and LOBRANO, JJ.
BARRY, Judge.
This appeal involves a determination of property values as the result of the State's expropriation of a bowling alley site due to construction of a bridge.
The expropriated land was owned by the Pipes family and leased to Fazzio Real Estate Co., Inc. which constructed a bowling alley. Fazzio Recreation Center, Inc. owned the lanes and pinsetting equipment. On June 15, 1973 Fazzio subleased the land, building, lanes and equipment to Bridge Bowl, Inc. for $100,000.00 a year for five years with eight five year options and a ninth option of two years. On June 15, 1978 the first option was exercised for $112,000.00 per year.
Bridge Bowl's profits increased steadily until late 1978 at which time numerous media announcements indicated a bridge across the Mississippi River would require expropriation of its property. League bowlers did not renew contracts and business decreased until October 16, 1981 when Bridge Bowl closed.
On August 17, 1982 the State expropriated pursuant to La.R.S. 48:441 et seq and deposited $1,359,900.00 with the court as an estimate of just compensation. The court ordered distribution of $1,059,900.00 to Pipes and Fazzio and reserved $300,000.00 until it could determine Bridge Bowl's rights.
The trial court held that Pipes and Fazzio were entitled to $1,376,400.00 for the land, improvements and equipment. Bridge Bowl was awarded $400,000.00 for loss of income from late 1979 to termination of its lease in June, 1983 and $108,000.00 for rent owed through the date of expropriation which was ordered paid to Fazzio. Experts' fees were assessed against the State.
The State appeals the $508,000.00 award to Bridge Bowl asserting it was error to award business losses in the absence of adequate proof. The State maintains that the owners and lessees did not know that their property would be expropriated until May 19, 1980 and that the State assured occupancy through September of 1981; therefore, it was speculative to hold that bowling leagues left in 1979 and 1980 because of the expropriation. The State argues that Bridge Bowl's loss of business was affected more by competition than the impending expropriation.
Bridge Bowl submits Article I, Section 4 of the Louisiana Constitution of 1974 and R.S. 48:453(C) entitle it to compensation for its total loss. It points to its anticipated stay and continued business at the same location for the 37 years remaining on the options.
Dr. Terrence Clauretie, an expert economist concerned with business losses and evaluations, detailed Bridge Bowl's losses. He pointed out that Bridge Bowl's cash flow increased steadily through May, 1978 *295 when the fiscal year cash flow was $98,963.00. In fiscal 1979 the cash flow dropped to $73,023.00 and in 1980 there was a negative cash flow of $17,021.00. Dr. Clauretie testified that Bridge Bowl would have cash flows of $87,572.00 in 1980, $99,298.00 in 1981, $110,042.00 in 1982 and $126,230.00 in the last year had the expropriation not taken place. He estimated Bridge Bowl's total loss at $443,305.00 plus its rental obligation. The State made no effort to appraise the business, thus the trial court stated in written reasons:
I was impressed with the fairness and logic of Bridge Bowl's economist Dr. Terrence Clauretie. I find that the operator, due to news of the imminent expropriation and as a result of the taking, lost a total of $400,000.00.
By supplemental pleadings, the Fazzio interest claim rent from Bridge Bowl through the taking. Bridge Bowl stopped paying rent on the building in July, 1981 and on the lanes and equipment in August, 1981. Bridge Bowl ceased operations in October, 1981, ten months before the expropriation. When they abandoned the building, the lessor changed the locks. Bridge Bowl claims an eviction terminating its obligation to pay rent. I disagree. When Bridge Bowl abandoned the premises, it had the utilities turned off. I believe the owner had a right, indeed an obligation, to secure the premises. I do not view this as either an eviction, or an acquiescence. I conclude Bridge Bowl owes rent of $108,000.00. I do not believe the owner is entitled to rent beyond the time of the taking, absent a showing of lessor lease advantage. Because my calculation of loss profit was based on net income, Bridge Bowl should recover this amount from the State as an additional item in the loss of its business.
The determination of what amount will compensate the owner of a property right, to the full extent of his loss because of expropriation of his right, must be made on the basis of the facts of each case and in accord with the uniqueness of the thing taken. State, Department of Transportation and Development v. Winn, 463 So.2d 648 (La.App. 4th Cir.1984); Southern Natural Gas Co. v. Poland, 406 So.2d 657 (La.App. 2d Cir.1981), writ denied 412 So.2d 86 (La.1982), cert. denied 459 U.S. 833, 103 S.Ct. 75 (1982). Such findings will not be altered unless manifestly erroneous. Winn, supra. We are satisfied with the proof of loss and have no basis to disturb the factual finding.
The expropriation occurred August 17, 1982 and damages were set through June, 1983. The State contends that losses should not be awarded after the expropriation because under C.C. Art. 2697[1] the lease ends with the expropriation.
The first option was for five years through June, 1983. Although Bridge Bowl had ceased operations, the lease was not terminated.
In State, Department of Transportation and Development v. Exxon Corp., 430 So.2d 1191 (La.App. 1st Cir.1983), writs denied 437 So.2d 1155, 437 So.2d 1156 (La. 1983), damages were awarded for loss of business profits up to expiration of the lease but not beyond since any amount thereafter would be speculative.
It is uncontested that Bridge Bowl was deprived of occupancy of the premises. Hence, the trial court correctly held that Bridge Bowl was entitled to lost profits up to expiration of the current option period.
Bridge Bowl alleges the trial court erred in failing to award attorney fees since the 1974 Constitution mandates that an owner shall be compensated to the full extent of its loss. Bridge Bowl contends the State was arbitrary and in bad faith by not making any offer to compensate for its losses.
*296 R.S. 48:453(E), permitting attorney fees in expropriation suits, provides in part:
Reasonable attorney fees may be awarded by the court if the amount of the compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment.
It is apparent that the Legislature intended such an award to be permissive. The trial judge made no mention of attorney fees which was within his discretion.
The Pipes appeal the court's failure to award attorney fees and court costs. They argue that as prevailing parties they are entitled to fees under R.S. 48:453(E) and costs under R.S. 13:5112(A).[2]
R.S. 13:5112(A), like R.S. 48:453(E), is permissive and the denial of fees and costs was proper.
Fazzio contends the court erred in not awarding business loss damages or providing compensation for leasehold advantages from the date of expropriation through the end of the sub-lease. Fazzio maintains that his two corporations' "business" was the lease of the building and equipment and that he is entitled to damages for the same period as Bridge Bowl.
We disagree. The Fazzio interests were adequately compensated by their share of the $1,376,400.00 award plus the $108,000.00 rental. The trial judge noted: "There is no lease-hold advantage" and "I do not believe the owner is entitled to rent beyond the time of the taking, absent a showing of lessor lease advantage." Fazzio made no such showing.
Fazzio's rejected request for attorney fees was within the trial court's discretion.
The judgment is affirmed.
AFFIRMED.
NOTES
[1] C.C. Art. 2697 in pertinent part provides:

If, during the lease, the thing be totally destroyed by an unforseen [unforeseen] event, or it be taken for a purpose of public utility, the lease is at an end.
[2] R.S. 13:5112(A) provides:

In any suit against the state or any department, board, commission, agency, or political subdivision thereof, the trial or appellate court, after taking into account any equitable considerations as it would under Article 1920 or Article 2164 of the Code of Civil Procedure, as applicable, may award in favor of the successful party and against the state, department, board, commission, agency, or political subdivision against which judgment is rendered, such court costs under R.S. 13:4533 and other applicable law as the court deems proper but, if awarded, shall express such costs in a dollar amount in a judgment of the trial court or decree of the appellate court.