550 So.2d 767 (1989)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Plaintiff-Appellant,
v.
Addie Gilbert HAMMONS, et al., Defendant-Appellees.
No. 20,725-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1989.
*768 Frederick J. Fuselier, Baton Rouge, for appellant.
Singer, Boothe & Dean by Samuel T. Singer, and John R. Boothe, Winnsboro, for appellees.
*769 Before HALL, MARVIN and LINDSAY, JJ.
LINDSAY, Judge.
This is an expropriation suit filed by the state, through the Department of Transportation and Development. The trial court awarded the defendants, co-owners of an expropriated tract of land in Wisner, Louisiana, compensation in the amount of $235,345.00, subject to a credit for funds previously withdrawn from the registry of the court. The court also awarded interest at the legal rate on the amount awarded from date of judicial demand, until paid, and attorney fees, as provided under the expropriation statutes, plus all costs of the proceedings. From this judgment, the state, through the Department of Transportation and Development, appeals. The defendants answered the appeal, initially requesting an increase in the amount of compensation awarded by the trial court. However, the defendants have failed to pursue that issue. For the reasons discussed below, we amend the trial court's judgment, and as amended, we affirm.

FACTS
On May 25, 1983, the Department of Transportation and Development expropriated certain property in Wisner for highway construction purposes. The property expropriated was a strip of land which formerly comprised the abandoned Missouri Pacific Railroad right-of-way which traversed the length of Franklin Parish. Numerous landowners throughout the parish were named as defendants. Just compensation of $1,267,153.00 was deposited into the registry of the court to compensate the owners of the entire tract as they came forth, pursuant to the "quick-taking" statute, LSA-R.S. 48:441 et seq.
On February 17, 1987, an answer was filed by the defendants in this case ("the Gilbert heirs"). The defendants claimed ownership of a portion of the expropriated property located in the town of Wisner. The property owned by the defendants consists of two strips of land 100 feet wide and 4,080 feet long, separated by a 1,200 foot strip known as the "depot property." The defendants sought just compensation of $408,000.00 for their portion of the property taken by the state for the widening of the roadway.
On February 26, 1987, the trial court recognized the defendants' ownership of this portion of the property and entered a judgment allowing them to withdraw the sum of $142,800.00 from the registry of the court, together with any interest earned thereon from the date of deposit by the state.
Trial to determine the amount of just compensation was held on May 19, 1988, at which time the defendants sought an increase in the compensation previously awarded to them for their portion of the expropriated land. The defendants presented the testimony of two expert witnesses, appraisers Robert Lowe and Donald R. Lockard. The state presented the testimony of James C. McNew, also a real estate appraiser. The evidence presented at the hearing consisted of the testimony of these expert witnesses and their supporting documentation.
All of the experts appraised the property as of the date of taking, May 27, 1983. Their calculations were based on a total area of 408,000 square feet, or a net footage of 389,000 square feet of usable property. These calculations encompassed the area within the two long stretches or strips of land running through the corporate limits of Wisner.
Mr. Lowe, a local appraiser from Winnsboro, Louisiana, analyzed the property and determined that the highest and best use of the property would be either commercial or light industrial use. He assessed a final net value of $245,975.00 for the property. In reaching this figure, he utilized a market data approach, by which he analyzed other comparable commercial and residential properties in the same area and compared them to the subject property. In so doing, he considered that a "reasonable" length of time would be required to sell the subject property. He then divided the subject property into five tracts to which he assessed different values according to their *770 various attributes.[1] He appraised the property as having a total value of $276,375.00. However, he applied a discount of $30,400.00, or 11 percent, because of the size of the property and the time needed to sell it, thereby arriving at his final evaluation of $245,975.00. (We note that Mr. Lowe's report incorrectly states that a discount of 5.5 percent was applied.)
Mr. Lockard, who was also familiar with the Wisner area, found that the highest and best use of this property would be for development for small-town highway strip commercial use. He based this on its proximity to the main artery of traffic through the town of Wisner. He assessed a straight market value of $292,500.00 to the property, which he divided into two parcels. Mr. Lockard utilized an "income approach" analysis, which he described as a modification of the market approach which recognized that the property could not be disposed of quickly. He assessed a final market value for the entire tract of $245,000.00, or 60 cents per square foot for the total area or 63 cents per square foot for the developable area. This took into account the extended period of time which would be necessary for the landowners to sell the property in lots. By Mr. Lockard's calculations, a period of about seven years would be required for full development, sale and "absorption" of the property.
Mr. McNew, the state's real estate appraiser from Shreveport, found that the highest and best use for the property in question was to sell the entire tract to a single speculator or investor who would then sell the property in lots over time for commercial, residential, and industrial purposes. He based his analysis upon a single sale to a single buyer on the day of taking for cash. He applied a 25 percent discount based on the large size of the property and the length of time required for an investor to sell the property. His estimated market value of the property was $132,300.00, or 34 cents per square foot. In reaching this figure, he considered a ten-year "absorption period" for the sale of the property. He indicated that the property could be divided into lots and sold for commercial or residential uses.
At the conclusion of trial, the trial court awarded just compensation of $235,345.00, subject to a credit for the amount previously withdrawn from the registry of the court, together with accumulated interest on the award from May 27, 1983, until paid, and attorney fees of twenty-five percent of the difference between the amount previously paid into the registry of the court and the amount awarded, plus all costs.
In its oral reasons and subsequent written opinion, the trial court found fallacies in the testimony of both Mr. McNew and Mr. Lockard. The court found that Mr. Lowe, however, had most accurately established "the fair market value" of the property. The trial court found that fair market value depicts a situation in which there is a willing buyer and a willing seller, both of whom were informed and on an equal footing insofar as knowledge of the property and the market conditions, who negotiate and arrive at a price. Using that hypothesis, and because the court found that the property's highest and best use was either for single family residences or small town commercial entities, the court considered two particular sales referred to by the experts, one of residential property and one of commercial property.
The sales considered by the trial court occurred within a ten to twelve month period prior to the taking of the property in question. The trial court arrived at an average of 60.5 cents per square foot based upon the averages of these two sales.[2] It calculated the sum of $235,345.00 from a computation of 389,000 square feet at 60.5 cents per square foot. The court found it unnecessary to project such factors as the *771 length of time the property would be on the market.
On July 12, 1988, a judgment in conformity with the trial court's opinion was signed. From this judgment, the state appeals.
On appeal, the state urges this court to render judgment of $10,500.00 in favor of the state. The state contends that it is entitled to this amount, which is the difference between $142,800.00, the amount deposited in the registry of the court, and $132,300.00, the amount of Mr. McNew's appraisal of just compensation.
The defendants answered the appeal, seeking an increase of the compensation awarded by the trial court to the sum of $265,000.00. They also requested an increase in the award of attorney fees. However, the defendants did not pursue this matter on appeal. In their brief they merely requested affirmation of the trial court judgment.

LAW
The state argues that the trial court abused its discretion in awarding excessive compensation to the defendants and thus committed manifest error.
Property cannot be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into the registry of the court for his benefit. La. Const. 1974, Art. I, § 4; State, Department of Transportation and Development v. Rushing, 514 So.2d 209 (La.App. 3rd Cir. 1987).
The compensation is measured by the market value of property taken. Market value has been defined as meaning the worth of the land considered in the light of its best and highest use, this being the most favorable employment to which the property is adaptable and may reasonably be put in the not too distant future. State, Department of Transportation and Development v. Winn, 463 So.2d 648 (La.App. 4th Cir.1984); State, Department of Transportation and Development v. Goldsby, 427 So.2d 580 (La.App. 5th Cir. 1983); Town of Rayville v. Thomason, 404 So.2d 1290 (La.App. 2d Cir.1981).
The fundamental definition of market value is the price that informed and willing buyers and sellers would reach under usual and ordinary circumstances. Southwestern Electric Power Company v. Scurlock, 485 So.2d 72 (La.App. 2d Cir. 1986).
Several factors may be considered in determining the highest and best use. These include: market demand; proximity to areas already developed in a manner compatible with the intended use; economic development in the area; specific plans of businesses and individuals, including action already taken to develop the land for that use; scarcity of land available for that use; use permitted by zoning ordinances; and the use to which the property was being put at the time of the taking. State, Department of Transportation and Development v. Boagni, 509 So.2d 471 (La.App. 3rd Cir.1987); Hospital Service District No. 1 v. Guillot, 482 So.2d 765 (La.App. 5th Cir.1986).
Opinions as to the value expressed by experts are not binding on the trier fact since they are ordinarily not conclusive and generally regarded as advisory in character. The purpose of such opinions is to assist the court in its efforts to determine the ultimate facts. The trial court may not, however, substitute its findings for that of experts who testify at trial when such testimony is well grounded from the standpoint of good reasoning. Rushing, supra.
In an expropriation proceeding, the trial judge is not required to accept or reject the testimony of any particular witness, but may give whatever weight he considers appropriate to the testimony of any and all witnesses in making his factual determination of the value of the property taken. He may reach a conclusion which does not coincide with the testimony of any witness. State, Department of Transportation and Development v. Mayet, 521 So.2d 671 (La.App. 1st Cir.1988).
*772 The trial court is granted a great deal of discretion in determining the value of land in expropriation cases. The fixing of value of the property by the trial court will not be disturbed unless manifestly erroneous. Mayet, supra.
Highest and best use is merely a starting point from which the appraiser begins to compile evidence of transactions he believes are similar to the property he appraises. Wide variations in these appraisals are caused by differing opinions on highest and best use. The responsibility to resolve these variations lies solely within the informed discretion of the trier of fact. Southwestern Electric Power Company v. Scurlock, supra.
In computing market value of property taken, appraisers utilize various methods of analysis, which include the determination of highest and best use, the study of comparable sales, cost and depreciation studies and income analysis. The more reliable and approved method in determining fair market value of property taken is to consider comparable sales, adjusting them to compensate for their relative good and bad features with regard to the property expropriated. State, Department of Transportation and Development v. Tynes, 433 So.2d 809 (La.App. 1st Cir.1983), writ denied, 437 So.2d 1153 (La. 1983); Winn, supra. The determination of what amount will compensate the owner of a property right, to the full extent of his loss because of expropriation of his right, must be made on the basis of the facts of each case and in accordance with the uniqueness of the thing taken. Winn, supra.
In expropriation suits the date of the taking is the date the suit is filed, for on this occasion the property rights specified in the petition are transferred to and vested in the state. LSA-R.S. 48:445. It is on this date that the value of the property must be determined. In an effort to assure similarity between a given comparable and the property expropriated, the courts have consistently held that transactions which followed the date of the taking should not be considered. State, Through Department of Highways v. Rosenblum, 344 So.2d 424 (La.App. 1st Cir.1977).

DISCUSSION
The state contends that both of the defendants' expert witnesses ignored the fact that the only sales of lots in the town of Wisner were for less than 50 cents per square foot. The state also argues that its expert's opinion that the highest and best use for the property was for sale to a speculator or investor who would develop and sell the property over time was more reasonable than the highest and best uses suggested by the defendant's witnesses or arrived at by the trial court. The state argues that the defendant's experts did not consider that there would be little market for the entirety of the tract in question. The state contends that Mr. McNew's opinion was soundly based on facts, and the trial court was not entitled to disregard his testimony and impose its own judgment in its place.
The defendants argue that the trial court obviously gave greater weight to the testimony of Mr. Lowe, who was more familiar with the area than the state's witness. Furthermore, they argued that the trial court's evaluation of credibility of the expert witnesses should not be set aside on appeal.
All the appraisers utilized comparable sales of commercial and residential properties in the area in determining the value of the expropriated property. The two experts testifying on behalf of the defendants concluded that the highest and best use for the subject property would be highway strip commercial use. Factors apparently influencing their determinations were the location of the property, much of which fronted on Highway 15, as well as the lack of zoning ordinances restricting the property's use.
The state's appraiser apparently did not disagree with these opinions regarding suitability, as he too testified that the property could be sold for commercial use. We do not believe his testimony that the property should be sold to a speculator for *773 subsequent sale, is a proper category of use in determining the property's "highest and best use."
Examination of the record indicates that the trial court's reservations about Mr. McNew's testimony were well-founded. He utilized a definition of "market value" which was one-sided in favor of a single prospective buyer of the entire tract, and which did not adequately consider the interests of the seller. Thus, Mr. McNew's analysis of how a prospective developer could derive a profit from this property resulted in a determination of the lowest limits in the market place at the time of the taking, rather than the fair market value. Also, he included in his comparables a sale occurring in 1986, almost three years after the taking of the property in this case. Furthermore, Mr. McNew, who was from Shreveport, was apparently not as familiar with the area around Wisner as were the other two appraisers.
We find that the trial court committed no manifest error insofar as it found that $235,345 correctly established the per square foot value of the expropriated property. As previously observed, the trial court arrived at this figure by averaging a comparable residential sale and a comparable commercial sale, both of which occurred shortly before the taking of the property at issue. In reaching this figure, the trial court exercised its wide discretion by accepting portions of the testimony of Mr. Lowe and Mr. Lockard, both of whom included the two sales in their respective analyses.[3] The trial court obviously considered and utilized additional information contained in their testimony, such as the fact that part of the property contained highway frontage (and was thus suited for highway strip commercial use), while the other part did not (making that part better suited for residential purposes).
However, we find that the trial court erred in not applying a discount factor to the initial value of the land to take into account the length of time it would have taken the landowners to sell the property. All three of the appraisers agreed that it was appropriate to consider such a factor, and, in fact, all three took that factor into account to some degree. Mr. Lowe, whose testimony the trial court found to be the most credible, applied an actual discount of 11 percent to his initially assessed value of the subject property.
We find Mr. Lowe's discount of 11 percent to be reasonable, and thus apply it to the per square foot value of $235,345.00, to arrive at a final compensation award of $209,457.05.
Therefore, we amend the judgment of the trial court to reflect a just compensation award of $209,457.05. The award of attorney fees, which are calculated as 25 percent of the difference between the amount awarded and the amount previously deposited in the registry of the court, is likewise amended to reflect the amended award of just compensation. By our calculation, the amended award of attorney fees is $16,664.26. As thus amended, we affirm the judgment of the trial court.

CONCLUSION
The judgment of the trial court is amended to show an award of just compensation in favor of the defendants and against the state in the amount of $209,457.05, subject to a credit for the sums previously withdrawn from the registry of the court. The award of attorney fees is likewise amended to the sum of $16,664.26. In all other respects and as thus amended, the judgment of the trial court is affirmed. Costs in this court are assessed against the defendants.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] He assessed the five tracts as having varying per square foot values: tract one, 85 cents per square foot; tract two, 45 cents per square foot; tract three, 40 cents per square foot; tract four, 75 cents per square foot; and tract five, 60 cents per square foot.
[2] The residential property sold for 46 cents per square foot in March, 1982, and the commercial property sold for 75 cents per square foot in July, 1982.
[3] In fact, Mr. Lowe testified that he assigned great weight to the residential sale.