11 STEWART, Judge.
The Department of Transportation and Development brought expropriation lawsuits for two parcels of land owned by Charles Oswald and his wife. After consolidating the lawsuits, the trial court found that the Oswald properties were a business rather than an investment and that they were entitled to an amount that exceeded the fair market value of the property. DOTD was ordered to pay $358,542.44 plus legal interest and attorney’s fees. The state subsequently lodged this appeal. We reverse in part, modify in part, affirm in part, and render.
FACTS
This cause of action arose out of the expropriation of two parcels of land by the State of Louisiana, Department of Transportation and Development, from defendants, Charles Oswald and his wife, for use in the construction of 1-49 in Shreveport. On the property were 35 “shotgun” houses, which the defendants used as rental property. Pursuant to the requirements of the “Quick Taking Statute,” found in LSA-R.S. 48:441, et seq., DOTD deposited into the registry of the court $88,-624.00 and $81,537.00, as payment for parcels 69-9 and 71-3, respectively. At trial, the parties stipulated that the market value of parcel 69-9 was $92,500.00 and $85,000.00 for parcel 71-3. This amount exceeded the initial deposit by more than $9,699.00. The parties also stipulated to pre-expropriation rental losses of $4,000.00.
The primary issue at trial, as it is on appeal, was whether Mr. Oswald was entitled to any amount over the stipulated market value in order to fully compensate him for the expropriation. At trial, the defendants presented two expert witnesses, Dr. Harju, a professor of economics and finance at Louisiana State University and Cliff McCormick, an appraiser. Dr. Harju testified that the defendant had ongoing business enterprise and not just an investment. McCormick explained that the 12defendant’s business was unique because of the manner in which the houses were maintained, the houses proximity to each other and their proximity, to the bus line, the disappearance of similar properties in the Shreveport area, the stable tenant base, and the defendant’s system of handling the repair problems that frequently arose.
The trial court rendered judgment and ordered DOTD to pay Oswald the $169,-801.00 already on deposit in the court registry, plus an additional $177,412.22 as the replacement value of the defendant’s business operation, $4,000.00 in pre-expropriation losses, and attorney’s fees pursuant to the Quick Taking Statute. This award also includes legal interest from the date the petition was filed until paid. In its written reasons for judgment, the trial court found that the defendants’ ownership of the rental units was an ongoing business and as such, the defendant was entitled to an amount above the stipulated fair market value. The state lodged this appeal.
DISCUSSION
On appeal, the state challenges the finding that the expropriated property was an indispensable part of an ongoing business and the award of damages in excess of the stipulated fair market value. The state argues that the rental units were merely investment property and not a unique and indispensable part of an ongoing business.
Property may not be taken or damaged by the state except for public purposes and with just compensation to the owner. In every expropriation the owner shall be compensated to the full extent of the loss. State, Dep’t. of Transp. and Dev. v. Griffith, 585 So.2d 629 (La.App. 2 Cir.1991), citing LSA-Const. art. 1, § 4; State, Dep’t. of Transp. and Dev. v. Lobel, 571 So.2d 742 (La.App. 2 Cir.1991), writ not considered, 577 So.2d 2 (La.1991). The determination of what amount will compensate a landowner to the full extent of the loss must be made on the basis ofjjthe facts of each case and in accordance with the uniqueness of the thing taken. State, Dep’t. of Transp. and Dev. v. Hammons, 550 So.2d 767 (La.App. 2d Cir.1989); Southern Natural Gas Co. v. Poland, 406 So.2d 657 (La.App.2d Cir.1981), writ denied, 412 So.2d 86 (La.), cert. denied, 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982).
*671 Generally, full compensation is mea-' sured by the market value of the expropriated property or the price which would be agreed upon between the informed and willing buyers and sellers under usual and normal circumstances. State, Dep’t. of Transp. and Dev. v. Hammons, supra; State, Dep’t. of Transp. and Dev. v. Fakouri, 541 So.2d 291 (La.App. 3d Cir.1989), writ denied, 544 So.2d 405 (La.1989). However, the expro-priatee is not limited to the market value of his property, if such does not fully compensate his loss. State, Dep’t. of Transp. and Dev. v. Dietrich, 555 So.2d 1355 (La.1990); State Through Dep’t of Highways v. Constant, 369 So.2d 699 (La.1979).
In unusual situations, the market value of the expropriated property constitutes insufficient compensation and the expropria-tee is entitled to replacement value, the amount necessary to reconstitute the property. However, an award of replacement value is the exception, not the rule. State, Dep’t. of Transp. and Dev. v. Griffith, supra. The Louisiana Supreme Court stated:
We do not, by these rulings, announce any general principle that replacement cost is always the most appropriate measure of awarding a landowner compensation for the taking of a physical asset used in his business....
Generally, we assume, the landowners may be compensated fully by other approaches than by awarding them the replacement cost of the improvement taken, especially where (unlike the present instance) the property is not shown to be both unique in nature and location and also indispensable to the conduct of the landowners’ business operations on the site from which a part is taken.
State Through Dep’t of Highways v. Constant, supra at 706.
LClearly, it must be shown that the uniqueness and indispensability of the expropriated property would render it more valuable to the expropriatee than it would be to the average buyer. In such a ease, the market value of the property would inadequately compensate the defendant and, based on his unique, indispensable need for the property, would place the defendant in a worse pecuniary position than he had been in before the taking. Id.; See State, Dep’t. of Transp. and Dev. v. Lobel, supra.
In the instant case, we disagree with the trial court’s determination that the subject property was unique and indispensable such that the defendants should have been awarded anything other than the fair market value and the stipulated rental losses.
First, there is no indication that the rental units were unique. Although the units were apparently well maintained by Mr. Oswald, they were over 38 years old and, by his own admission, required a great deal of upkeep and maintenance. Although counsel for defendants argues that Mr. Oswald had a solid tenant base, many of these tenants were of advanced age, which implies that this stability would shortly and rapidly have begun to decline.
Next, defendants claim that the location of the houses is unique because the units are within close proximity to each other and are located on a city bus line. However, Mr. Oswald, Dr. Harju, and Cliff McCormick all testified at trial that the houses in question were similar in style to other houses located all over the city of Shreveport. Although the defendants’ houses may have been better cared for than others in the city, this alone is insufficient to establish that the subject properties are unique in location. Furthermore, this court in Dep’t. of Transp. and Dev. v. Lobel, supra, held that identical properties, similarly maintained and owned by Bernard 15Lobel, located directly across the street from the rental units in the instant case, were not unique in nature or location and awarded Lobel only the fair market value of the property. This court is bound by its decision in Lobel.
Based on the evidence in the present record and the jurisprudence, we find the replacement value of the property taken in this case to be an inappropriate measure of damages.
DECREE
For the foregoing reasons, the decision of the trial court is reversed insofar as it awarded $177,712.22, as the replacement val *672 ue of the defendants’ business. The state is ordered to compensate the defendants in the amount of $181,500.00, which includes compensation for the expropriation of parcels 69-9 and 71-3 plus $4,000.00 in pre-expropriation rental losses. Pursuant to LSA-R.S. 48:455, $13,699.00, the amount of the judgment that exceeds the amount originally deposited in the court registry, is to bear legal interest from the date of the presentation of the petition until the judgment is paid. Additionally, pursuant to LSA-R.S. 48:451, 25% of $13,699.00, or $3,424.75 (the difference between the amount awarded as compensation and the amount deposited by DOTD), is awarded as attorney’s fees. In expropriation proceedings, the condemning authority is taxed with the reasonable costs of the testifying expert witnesses retained by the landowner to assist him in attaining his just compensation. However, inasmuch as the state has not attacked the fees charged by defendants’ experts, we will not disturb the amount awarded by the trial court.
REVERSED IN PART; MODIFIED IN PART; AFFIRMED IN PART; RENDERED.
APPLICATION FOR REHEARING
Before SEXTON, HIGHTOWER, STEWART and GASKINS, JJ„ and PRICE, J. Pro Tern.
Rehearing denied.